O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| CHRIS KOHLER,<br><br>                    Plaintiff,<br><br>     v.<br><br>BED BATH & BEYOND OF<br>CALIFORNIA, LLC<br><br>                    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. EDCV 11-01246 VAP<br>(OPx)<br><br>**ORDER GRANTING DEFENDANT'S<br>CROSS-MOTION FOR SUMMARY<br>JUDGMENT; DISMISSING WITHOUT<br>PREJUDICE PLAINTIFF'S<br>REMAINING STATE LAW CLAIMS<br>[Motion filed on May 25,<br>2012]** |

Before the Court is a Cross-Motion for Summary
Judgment filed by Defendant Bed Bath & Beyond, LLC.
After considering the papers and arguments in support of
and in opposition to the Motion, the Court GRANTS
Defendant's Motion.

### I. PROCEDURAL HISTORY

On August 4, 2011, Plaintiff Chris Kohler
("Plaintiff") filed a complaint ("Complaint") alleging
claims against Defendant Bed Bath & Beyond, LLC

1  ("Defendant") and Defendant MGP IX Reit, LLC[1] for

2  violations of: (1) the Americans with Disabilities Act

3  ("ADA"); (2) the California Disabled Persons Act (Cal.

4  Civ. Code § 54); (3) Unruh Civil Rights Act (Cal. Civ.

5  Code § 51); and (4) California Health & Safety Code §§

6  19953-19959.  (Doc. No. 1.)  Plaintiff, who is paralyzed

7  from the waist down and uses a wheelchair, alleges that

8  he encountered illegal barriers to access when he visited

9  the Bed Bath & Beyond store in Murrieta, California ("the

10  Store").

11

12     On May 21, 2012, Plaintiff filed a motion for summary

13  judgment, or partial summary judgment in the alternative.

14  ("Plaintiff's May 21 MSJ" (Doc. No. 21).)  The Court, in

15  order to provide Plaintiff with time to correct his

16  filing, informed Plaintiff's counsel on May 24, 2012,

17  that the May 21 MSJ did not comply with the Local Rules

18  and the Court's Standing Order.  (See Doc. No. 32.)

19

20     On May 25, 2012, Defendant filed its Opposition to

21  Plaintiff's May 21 MSJ ("Opposition" or "Opp'n" (Doc.

22  Nos. 24)), which Defendant combined with its motion

23  presently before the Court, Defendant's Cross-Motion for

24  Summary Judgment[2] ("Cross-MSJ" (Doc. No. 28)).  In

25  _____

26     [1] Plaintiff dismissed Defendant MGP IX Reit, LLC on
    October 24, 2011.  (Doc. No. 10.)

27     [2] As this document contains both Defendant's

28                                          (continued...)

1  support of its Cross-MSJ, Defendant filed the following
2  documents:

    1.  Statement of Disputed and Undisputed Facts (Doc.
        No. 28-2);[3]

    2.  Request for Judicial Notice (requesting the
        Court take notice of the docket in <u>Rush v. Denco
        Enterprises, Inc.</u>, ---F. Supp. 2d---, 2012 WL
        1423584, (C.D. Cal. Apr. 24, 2012)) (Doc. No.
        28-3) and an image of the <u>Rush</u> docket as of May
        25, 2012 (attached to Cross-MSJ as "Exhibit 1"
        (Doc. No. 28-4));

    3.  Declaration of Ross Duskin ("Duskin
        Declaration") (Doc. No. 29); and

    4.  Declaration of Larry Wood ("Wood Declaration")
        (Doc. No. 30).

---

[2](...continued)
Opposition and its Cross-MSJ, Defendant filed the
document twice on May 25, 2012, under two different
docket titles.  The document is titled "Opposition" at
Docket Number 24, with supporting documents either
attached at Docket Number 24 or filed at Docket Numbers
25-27; the same document is titled "Cross Motion for
Summary Judgment" at Docket Number 28, with supporting
documents either attached at Docket Number 28 or filed at
Docket Numbers 29 and 30.

[3] This document first reproduces Plaintiff's
Undisputed Material Facts and Evidence from Plaintiff's
May 21 MSJ and sets forth Defendant's Response and
Supporting Evidence.  (Defendant's Statement of Disputed
and Undisputed Facts at 2-7.)  The document then provides
Defendant's Statement of Additional Undisputed Material
Facts ("SAUF").  (<u>Id.</u> at 7-8.)

Because Plaintiff failed to correct his deficient May 21 MSJ, the Court denied it without prejudice on May 31, 2012, allowing Plaintiff to refile "a Motion that complies in all respects with . . . the Local Rules of the Central District of California[] and the Standing Order of this Court."  (See Doc. No. 32.)

On June 1, 2012, Plaintiff filed a new Motion for Summary Judgment, which, other than the corrected technical deficiencies, was the same as his May 21 MSJ. (Doc. No. 34.)  That same day, Plaintiff filed a third version of his Motion for Summary Judgment ("Plaintiff's MSJ" (Doc. No. 36), which was the same as the previous motion except for minor, non-substantive changes. Plaintiff withdrew his second filed MSJ on June 4, 2012. (Doc. No. 38.)  Plaintiff's MSJ is set for hearing before the Court on July 2, 2012.

Plaintiff filed his Opposition to Defendant's Cross-MSJ on June 4, 2012 (Doc. No. 39), along with his Response to Defendant's SAUF ("SAUF Response" (Doc. No. 39-1)), a notice of deposition of Plaintiff sent by Defendant (Doc. No. 39-2), Plaintiff's declaration ("Kohler Declaration" (Doc. No. 39-3)), and a declaration submitted in a different case on a similar issue (Doc. No. 39-4).

1   On June 11, 2012, Defendant replied to Plaintiff's
2   Opposition. (Doc. No. 40.) Defendant supported its
3   Reply by filing the declaration of Matthew S. Kenefick,
4   one of Defendant's counsel ("Kenefick Declaration").
5   (Doc. No. 41.) The Kenefick Declaration attached
6   excerpts of Plaintiff's deposition (Doc. No. 41-1).
7   Pursuant to Federal Rule of Evidence 201, Defendant
8   attached and requested the Court take notice of the
9   following documents filed in <u>Rush</u>: three declarations
10  from Certified Access Specialists filed by the <u>Rush</u>
11  defendant after summary judgment was granted to
12  plaintiff[4] (Doc. Nos. 41-2, 41-3, 41-4) and the
13  plaintiff's Second Amended Complaint (Doc. No. 41-5).

14

15  Defendant filed an ex parte application on June 19,
16  2012, unsuccessfully requesting the Court consolidate the
17  hearings set for Defendant's Cross-MSJ and Plaintiff's
18  MSJ (Doc. Nos. 45, 46).

19

20  **II.   STANDING UNDER THE ADA**
21  **A.   Legal Standard**
22  Title III of the ADA provides that "[n]o individual
23  shall be discriminated against on the basis of disability
24  in the full and equal enjoyment of the goods, services,
25  facilities, privileges, advantages, or accommodations of

26  _____

27  [4] The <u>Rush</u> declarations address the same question
    regarding ADA requirements presented in the instant
28  Motion.

1   any place of public accommodation by any person who owns,

2   leases (or leases to), or operates a place of public

3   accommodation."   42 U.S.C. § 12182(a).

4

5       "[T]hose who seek to invoke the jurisdiction of the

6   federal courts must satisfy the threshold requirement

7   imposed by Article III of the Constitution by alleging an

8   actual case or controversy." City of Los Angeles v.

9   Lyons, 461 U.S. 95, 101 (1983).  To comply with that

10  requirement, litigants must demonstrate a "personal

11  stake" in the suit.  Summers v. Earth Island Institute,

12  555 U.S. 488, 493 (2009).  A plaintiff has a personal

13  stake in the suit when "(1) it has suffered an 'injury in

14  fact' that is (a) concrete and particularized and (b)

15  actual or imminent, not conjectural or hypothetical; (2)

16  the injury is fairly traceable to the challenged action

17  of the defendant; and (3) it is likely, as opposed to

18  merely speculative, that the injury will be redressed by

19  a favorable decision." Friends of the Earth, Inc. v.

20  Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 180-81

21  (2000).

22

23      Generally, where a plaintiff seeks declaratory and

24  injunctive relief, the plaintiff also must show a

25  significant possibility of future harm; it is

26  insufficient to demonstrate only a past injury. See San

27  Diego County Gun Rights Committee v. Reno, 98 F.3d 1121,

28

6

1  1126 (9th Cir. 1996).  The party invoking federal
2  jurisdiction bears the burden of establishing that each
3  element of standing is met.  Lujan v. Defenders of
4  Wildlife, 504 U.S. 555, 561 (1992).
5
6      To establish standing under Title III of the ADA, "a
7  plaintiff must allege that: '(1) he is disabled within
8  the meaning of the ADA; (2) the defendant is a private
9  entity that owns, leases, or operates a place of public
10  accommodation; and (3) the plaintiff was denied public
11  accommodations by the defendant because of his
12  disability.'" Kohler v. CJP, Ltd., 818 F. Supp. 2d 1169,
13  1176 (C.D. Cal. 2011) (quoting Ariz. ex rel. Goddard v.
14  Harkins Amusement Enters., 603 F.3d 666, 670 (9th Cir.
15  2010)).  An injured plaintiff can pursue injunctive
16  relief under the ADA by "[d]emonstrating an intent to
17  return to a noncompliant accommodation" or by
18  demonstrating that "he is deterred from visiting a
19  noncompliant public accommodation because he has
20  encountered barriers related to his disability there."
21  Chapman v. Pier 1 Imports (U.S.) Inc., 631 F.3d 939, 949
22  (9th Cir. 2011).  A plaintiff is "deterred" under Title
23  III of the ADA when he either (1) identifies how at least
24  one of the alleged violations threatens to deprive him of
25  full and equal access due to his disability if he were to
26  return to the place of public accommodation, or (2)
27  identifies how at least one of the alleged violations
28

1  deters him from visiting the place of public
2  accommodation due to his disability.  See id. at 955.  In
3  short, a plaintiff must connect the alleged ADA
4  violations to his disability in order to establish
5  standing.  Id. at 954; Kohler, 818. F. Supp. at 1174.
6
7  **B.  Discussion**
8       Defendant argues that the Court should grant summary
9  judgment in its favor primarily because all of the
10 barriers Plaintiff alleges "either do not constitute
11 disabled access barriers as a matter of law or do not
12 exist." (Cross-MSJ at 2.)  In the alternative, Defendant
13 argues that, assuming such barriers do exist, the Court
14 should grant summary judgement in Defendant's favor
15 because Plaintiff fails to meet the injury-in-fact
16 jurisdictional requirement.  (Id. at 16.)  As adequately
17 alleging an injury in fact is constitutionally required
18 for this case to be properly before this Court, the Court
19 addresses Defendant's standing claim first.
20
21      Defendant cites Chapman for the proposition that, to
22 satisfy the injury-in-fact requirement, "Plaintiff must
23 establish that he encountered the claimed disabled access
24 barriers and that the barriers affected his disability in
25 a manner that acted to deny him full and equal status."
26 (Cross-MSJ at 16 (citing 631 F.3d at 954-55).)  Defendant
27 argues that "Plaintiff utterly fails this standard"
28

1  because he "merely states, in the hypothetical tense, how

2  each alleged condition **could** affect him if he **were** to

3  encounter them – **not that it did affect him**.  Plaintiff

4  does **not** declare that he in fact visited the men's

5  restroom . . . ."  (<u>Id.</u> at 16-17 (emphasis in original).)

6  Therefore, Defendant argues, "Plaintiff has failed his

7  burden to establish he has standing."  (<u>Id.</u> at 17.)

8

9     Defendant is wrong.  The Central District of

10 California recently rejected a virtually identical

11 argument involving a defendant's motion to dismiss

12 against the same plaintiff.  In <u>Kohler v. CJP, Ltd.</u>, 818

13 F. Supp. 2d at 1174-75, the court found that

14       Kohler does more than merely identify barriers
         that he encountered at the Shopping Center; he
15       also provides a brief description of how each
         barrier affected him because of his disability.
16       For example, . . . Kohler identifies tow away
         signage that is posted incorrectly, and explains
17       that "[w]ithout the correct signage displayed,
         Kohler cannot have vehicles towed that are
18       illegally parked in disabled parking spaces."
         Although [Defendant] is correct that Kohler "fails
19       to . . . alleg[e] that he *did* have a need to have
         a vehicle towed," the explanation is sufficient to
20       satisfy *Chapman* since it gives rise to a plausible
         inference that Kohler will be deterred from the
21       purported violation from visiting the Shopping
         Center in the future. . . .  Because Kohler has
22       adequately pled the barriers he encountered, the
         manner in which those barriers prevented him from
23       gaining full access to the facility, and the fact
         that the barriers have deterred him from visiting
24       the Shopping Center, he has sufficiently alleged
         standing as to each barrier identified in his
25       complaint.

26

27    The Court finds the same analysis applies here

28 in the context of summary judgment, though to an even

9

stronger degree given the Court's consideration of
Plaintiff's declaration rather than just the
complaint, which was the only document available in
Kohler to support standing.  Plaintiff declared that
he twice visited Defendant's store, encountered
accessability barriers there that denied him full and
equal access to the store due to the fact that he is
paralyzed and confined to a wheelchair, and would
return to the store to make purchases were those
barriers removed.  (P.'s Mot. for Summary Judgment
(May 21, 2012), Kohler Decl. ¶¶ 2-4.)  Plaintiff then
declares how those barriers deter him from returning
to the store on account of his disability, e.g., by
"mak[ing] it difficult to open the restroom door,"
"reach the toilet tissue," and "maneuver out of the
restroom"; by making it so "[w]hen I use the sink, I
must struggle not to burn my legs on the incompletely
wrapped pipes"; or by making "opening and closing the
door . . . difficult from my wheelchair."  (Id. ¶
7(a-g).)    These alleged injuries are not
"hypothetical,"[5] as Defendant claims, and Plaintiff's

---

[5] Defendant confusingly asserts that Plaintiff
"merely states" each alleged barrier "in the hypothetical
tense," i.e., "how each alleged condition **could** affect
him if he **were** to encounter them."  (Cross-MSJ at 17
(emphasis in original).)  Despite the words not actually
appearing in the pertinent section of Plaintiff's
Declaration, Defendant adds emphasis to its auxiliary
verb – "could," the past indicative tense of "can" – and
its past tense verb – "were," used as the present
subjective conjugation of "be."  See THE CHICAGO MANUAL OF
(continued...)

10

evidence of the injuries appears stronger than the
evidence found sufficient for standing in <u>Kohler</u>.
Like in <u>Kohler</u>, Plaintiff here sufficiently states
how the violations deter him from returning, but he
also submits sufficient evidence of the injury he
suffered at the time he encountered the barriers.
For example, Plaintiff declares, "The disabled-
accessible toilet stall in the men's restroom lacks a
handle below the door latch.  Without a handle on the
door, opening and closing the door is difficult from
my wheelchair."  (<u>Id.</u> ¶ 7(g).)  To support this
allegation, Plaintiff submits a photograph of the
alleged barrier that was taken the same day he claims
to have encountered the barrier.  (<u>Id.</u> ¶ 6, Ex. B at
8.)

    <u>Chapman</u> clarifies the ADA's standing requirement
for a Plaintiff to identify the nexus between the
alleged ADA-noncompliant barrier and the plaintiff's

_____

        [5](...continued)
STYLE §§ 5.137, 5.143, 5.151 (16th ed. 2010).  While use
of the subjunctive mood would "express[] an action or
state as . . . hypothetical" (<u>Id.</u> § 5.120); Plaintiff
consistently employs the indicative mood, which here is
"used to express facts" (<u>Id.</u> § 5.118) and the present
tense, which here is "used . . . to express a habitual
action or general truth" (<u>Id.</u> § 5.123).  This is far from
simply a matter of grammatical accuracy.  Plaintiff's
grammatical style tracks the ADA's substance: Plaintiff
describes the barrier as he encountered it on that day
while simultaneously describing how the barrier will and
does habitually deter him from returning to the store due
to his disability.

disability status.   Chapman does not establish the
heightened evidentiary standard that Defendant
appears to assert.   As the Central District of
California found in Kohler, this Court too finds Mr.
Kohler "has sufficiently alleged standing as to each
barrier identified in his complaint."   818 F. Supp.
2d at 1174-75.


**III. DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT ON
        PLAINTIFF'S ADA CLAIMS**

**A.   Legal Standard**

     A court shall grant a motion for summary
judgment when there is no genuine issue as to any
material fact and the moving party is entitled to
judgment as a matter of law.   Fed. R. Civ. P. 56(a);
Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48
(1986).   The moving party must show that "under the
governing law, there can be but one reasonable
conclusion as to the verdict."   Anderson, 477 U.S. at
250.


     Generally, the burden is on the moving party to
demonstrate that it is entitled to summary judgment.
See Margolis v. Ryan, 140 F.3d 850, 852 (9th Cir.
1998) (citing Anderson, 477 U.S. at 256-57); Retail
Clerks Union Local 648 v. Hub Pharmacy, Inc., 707
F.2d 1030, 1033 (9th Cir. 1983).   The moving party
bears the initial burden of identifying the elements

of the claim or defense and evidence that it believes demonstrates the absence of an issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Because summary judgment is a "drastic device" that cuts off a party's right to present its case to a jury, the moving party bears a "heavy burden" of demonstrating the absence of any genuine issue of material fact. See Avalos v. Baca, No. 05-CV-07602-DDP, 2006 WL 2294878 (C.D. Cal. Aug. 7, 2006) (quoting Nationwide Life Ins. Co. v. Bankers Leasing Ass'n, Inc., 182 F.3d 157, 160 (2d Cir. 1999)).

Where the non-moving party has the burden at trial, however, the moving party need not produce evidence negating or disproving every essential element of the non-moving party's case. Celotex, 477 U.S. at 325. Instead, the moving party's burden is met by pointing out that there is an absence of evidence supporting the non-moving party's case. Id.; Horphag Research Ltd. v. Garcia, 475 F.3d 1029, 1035 (9th Cir. 2007).

The burden then shifts to the non-moving party to show that there is a genuine issue of material fact that must be resolved at trial. Fed. R. Civ. P. 56(c); Celotex, 477 U.S. at 324; Anderson, 477 U.S.

at 256.  The non-moving party must make an
affirmative showing on all matters placed in issue by
the motion as to which it has the burden of proof at
trial.  <u>Celotex</u>, 477 U.S. at 322; <u>Anderson</u>, 477 U.S.
at 252.  <u>See also</u> William W. Schwarzer, A. Wallace
Tashima & James M. Wagstaffe, <u>Federal Civil Procedure</u>
<u>Before Trial</u> § 14:144.  A genuine issue of material
fact will exist "if the evidence is such that a
reasonable jury could return a verdict for the non-
moving party."  <u>Anderson</u>, 477 U.S. at 248.

    In ruling on a motion for summary judgment, a
court construes the evidence in the light most
favorable to the non-moving party.  <u>Scott v. Harris</u>,
550 U.S. 372, 378, 380 (2007); <u>Barlow v. Ground</u>, 943
F.2d 1132, 1135 (9th Cir. 1991); <u>T.W. Elec. Serv.</u>
<u>Inc. v. Pac. Elec. Contractors Ass'n</u>, 809 F.2d 626,
630-31 (9th Cir. 1987).

**B.  Discussion**
    **1.  Facts**
    In its combined Cross-MSJ and Opposition to
Plaintiff's MSJ, Defendant included its response to
Plaintiffs' alleged undisputed facts and its
Statement of Additional Undisputed Facts ("SAUF").
To consider Defendant's Cross-MSJ, the Court relies

on Defendant's SAUF and Plaintiff's SAUF Response,
which Plaintiff attached to his Opposition.

    Defendant stakes its Cross-MSJ on the assertion
that the seven ADA-noncompliant barriers alleged by
Plaintiff in his Complaint "either do not constitute
disabled access barriers or even if they did at one
time exist, they no longer do." (Cross-MSJ at 3.)
In support of this defense, Defendant's SAUF alleges
seven  undisputed material facts, each of which
provides a descriptive account (as of May 23, 2012)
of the seven specific Store facilities, or properties
thereof, that Plaintiff alleges are ADA-noncompliant.
Plaintiff purports to dispute all seven of
Defendant's SAUF facts.

    The Court assesses Defendant's SAUF, Plaintiff's
SAUF Response, and both parties' supporting evidence
to determine whether any genuine issue of material
fact exists and, if one does not exist, whether
Defendant is entitled to judgment as a matter of law.

    No genuine issue of material fact exists if the
Court determines that Plaintiff's purported factual
disputes fail to actually address Defendant's
submitted facts or evidence but instead propound
legal arguments as to the merits of the case.

### a. Analysis of Alleged Disputed and Undisputed Facts

### i.       SAUF Fact #1

The entrance strike side clearance to the men's restroom entry door at the Facility provides more than 18 [inches] of clear floor space in either direction of the restroom door, thereby providing sufficient maneuvering clearances. (SAUF ¶ 1; Wood Decl. ¶¶ 5-7, Exs. 2-9.)

To SAUF Fact #1, Plaintiff responds, "Objection, irrelevant . . . . Plaintiff has alleged that 'There is insufficient <u>strike side clearance</u> when entering the restroom . . . ." (Response ¶ 1 (emphasis in original).)

Plaintiff emphasizes, ostensibly for clarification, the language of his allegation, which does not differ from the language in SAUF Fact #1. This does not address what Plaintiff is disputing about Defendant's fact or evidence. Nor does the evidence Plaintiff points to (but does not attach as exhibits to his Opposition)[6] – three pictures of an unmarked door, two of which include a ruler below the handle. (<u>Id.</u> (citing Doc. No. 36, Ex. A at 3, Ex. B at 12).)

_____

[6] <u>Cf.</u> Local Rule 11-5.2 ("Unless compliance is impracticable, a paper exhibit shall be filed as an attachment to the document to which it relates and shall be numbered at the bottom of each page consecutively to the principal document. Exhibits filed electronically shall comply with this rule unless precluded by L.R. 5-4.3.1."). None of the evidence to which Plaintiff cites is attached to his Opposition. Plaintiff inexplicably cites to the Kohler Declaration attached to Plaintiff's MSJ rather than the Kohler Declaration attached to his Opposition.

The Court finds Plaintiff has failed to meet his burden of controverting SAUF Fact #1.

### ii.      SAUF Fact #2

The exit strike side clearance to the men's restroom exit door at the Facility provides sufficient maneuvering clearances and does not contain a latching mechanism. (SAUF ¶ 2; Wood Decl. ¶¶ 5-7, Ex. 2-9.)

To SAUF Fact #2, Plaintiff first objects on the ground that Defendant is asserting compound facts. (SAUF Response ¶ 2.)  Plaintiff is correct; the Court thus considers SAUF Fact #2 to assert separately that (1) the exit strike side clearance to the men's restroom exit door at the Store provides sufficient maneuvering clearance; and (2) the exit strike side of the men's restroom exit door does not contain a latching mechanism.

As to the first fact of SAUF #2, the Court notes the ambiguity of the assertion (primarily of the word "sufficient") and so, as a preliminary matter, must identify whether it is a fact or a legal conclusion.  The alleged undisputed fact – that the strike side clearance to the restroom's exit door "provides sufficient maneuvering clearances" – tracks the language of the Kohler Declaration.  (See Kohler Decl. ¶ 7(f) ("There is insufficient strike side clearance when exiting the restroom.  This makes it difficult to maneuver out of the restroom.").)  To support SAUF #2, Defendant cites to

various ADA guidelines and statements from its expert
declarant, Larry Wood, regarding the specific ADA
requirements and the Store's compliance therewith.  (Wood
Decl. ¶¶ 5-7, Ex. 2-9.)

     The language of SAUF #2 and Defendant's supporting
evidence indicate that "sufficient maneuvering clearance"
refers to the Store's compliance with the specific
dimensions required by the ADA standards, i.e.,
"sufficient" is synonymous with "equal to or greater than
the 18 inches of maneuvering space required by the ADA
standards."  As discussed below, the parties dispute the
definition of "maneuvering space."  Plaintiff does not
dispute that there is a sufficient amount of space using
Defendant's definition; Defendant does not dispute that
there is an insufficient amount of space using
Plaintiff's definition.  Thus, the Court finds that SAUF
#1's use of the word "sufficient" only refers to the
definition of "maneuvering space" accepted by Defendant.
As such, no legal conclusion is called for, and
Plaintiff's response and evidence do not dispute the
fact.  The Court finds the first subpart of SAUF #2 to be
uncontroverted.[7]

_____

     [7] Some ambiguity also stems from Plaintiff's
disputing the fact with reference to Mr. Kohler's
declaration, in which Mr. Kohler states that
"insufficient strike side clearance . . . makes it
difficult to maneuver out of the restroom."  (Kohler
Decl. ¶ 7(f).)  Mr. Kohler's statement would dispute
                                        (continued...)

As to the second fact of SAUF #2 (the door "does not contain a latching mechanism"), Plaintiff objects on the ground that "[w]hat constitutes a latch requires a legal argument and will be addressed in plaintiff's opposition." (SAUF Response ¶ 2.) Plaintiff does not assert in his Response that the door does contain a "latch" under any definition, and no such assertion is made in or supported by Plaintiff's submitted evidence.[8]

Hence, the Court finds Plaintiff has failed to meet his burden with respect to the second subpart of SAUF Fact #2 and finds all of SAUF Fact #2 uncontroverted.

### iii.    SAUF Facts #3

The men's restroom stall door in the Facility has a 'U' shaped handle mounted below the latch on both sides. (SAUF ¶ 3; Wood Decl.  ¶ 8; Duskin Decl. ¶ 2, Ex. 1.)

---

[7](...continued) Defendant's alleged fact if "sufficient maneuvering clearance" were interpreted to mean clearance sufficient for Plaintiff to maneuver without difficulty.  That interpretation, though, would lead to the disputed fact being immaterial, as it would not be tied to the dispositive issue of what the ADA requires and whether the Store satisfied the requirements.

[8] The one reference to "latch" in the evidence Plaintiff cites is in the Kohler Declaration and refers to the stall door, not the restroom exit door, and is mentioned incidentally to describe the relative location of a separate alleged barrier.  (Kohler Decl. ¶ 7(g).)

1    Plaintiff submits clear photographic evidence that,

2  on May 2, 2012, the "U"-shaped handle in the restroom

3  stall was mounted *above* the latch.  (P.'s MSJ, Ex. B at

4  7.)  Defendant submits clear photographic evidence that,

5  on May 23, 2012, the "U"-shaped handle in the restroom

6  stall was mounted *below* the latch. (Duskin Decl. ¶ 2, Ex.

7  1.)

8

9    The Court finds Plaintiff has failed to meet his

10  burden of controverting SAUF Fact #3.

11

12              **iv.      SAUF Fact #4**

13    There are two (2) toilet tissue rolls mounted in
     the men's restroom of the Facility, the first of
14   which is mounted within 12 inches of the front of
     the water closet.  (SAUF ¶ 4; Wood Decl. ¶ 9, Ex.
15   10.)

16

17    As with his Response to SAUF Fact #1, Plaintiff

18  objects to SAUF Fact #4 because he alleges it is

19  "irrelevant," (Response ¶ 4), but does not otherwise

20  dispute or offer evidence to dispute the fact.

21

22    The Court finds Plaintiff has failed to meet his

23  burden of controverting SAUF Fact #4.

24

25              **v.      SAUF Fact #5**

26    No operable part of the paper towel dispenser in
     the men's restroom of the Facility is mounted
27   higher than 40 inches above the finished floor.
     (SAUF ¶ 5; Wood Decl. ¶ 10; Duskin Decl. ¶ 3, Ex.
28   2.)

Plaintiff submits clear photographic evidence that, on May 2, 2012, an operable part of the paper towel dispenser was mounted higher than 40 inches above the floor. (P.'s MSJ, Ex. B at 9.)  Defendant submits clear photographic evidence that, on May 23, 2012, no operable part of an added paper towel dispenser was mounted higher than 40 inches above the floor. (Duskin Decl. ¶ 3, Ex. 2.)

The Court finds Plaintiff has failed to meet his burden of controverting SAUF Fact #5.

### vi.     SAUF Fact #6

The paper towel dispenser in the men's restroom of the Facility does not require tight grasping, pinching, or twisting of the wrist to operate; rather, the mechanism can be operated with a closed fist. **(**SAUF ¶ 6; Wood Decl. ¶ 11; Duskin Decl. ¶ 3, Ex. 2.**)**

Both parties submit the same evidence for SAUF Fact #6 as for SAUF Fact #5.  The Court finds Plaintiff has failed to meet his burden of controverting SAUF Fact #6.

### vii.     SAUF Fact #7

All undersink pipes in the men's restroom at the Facility are completely wrapped and insulated. (SAUF ¶ 5;  Wood Decl. ¶ 12, Ex. 11.)

Plaintiff submits clear photographic evidence that, on May 2, 2012, a small portion of one undersink pipe was

exposed. (P.'s MSJ, Ex. B at 3.)  Defendant submits clear photographic evidence that, on May 23, 2012, all undersink pipes were completely wrapped and insulated. (Wood Decl. ¶ 12, Ex. 11.)  The Court finds Plaintiff has failed to meet his burden of controverting SAUF Fact #7.

### b.  Conclusion

The Court finds all seven facts set forth in Defendant's SAUF to be uncontroverted by Plaintiff's SAUF Response and supporting evidence.  Thus, disposition of Defendant's Cross-MSJ turns solely on whether Defendant is entitled to judgment as a matter of law.

## 2.  Judgment as a Matter of Law

### a.  ADA Requirements for Restroom Strike Side Clearance

The parties dispute the meaning of the ADA's requirement for door clearances and, by extension, whether or not a barrier exists in violation of the ADA.

For physical structures to comply with the ADA, they must meet the requirements set forth in the ADA Accessibility Guidelines for Buildings and Facilities ("ADAAG").[9]  The disputed question of law here pertains

---

[9] The ADAAG "contains scoping and technical requirements for accessibility to buildings and facilities by individuals with disabilities . . . [that] are to be applied during the design, construction, and
(continued...)

to ADAAG § 4.13.6 and its accompanying illustration, Figure 25. Section 4.13.6 sets forth the following:

> **Maneuvering Clearances at Doors.** Minimum maneuvering clearances at doors that are not automatic or power-assisted shall be as shown in Fig. 25. The floor on ground area within the required clearances shall be level and clear.

Figure 25 contains diagrams illustrating the maneuvering clearances required for the two sides of different kinds of doors and approaches. The Figure 25 diagram at issue here pertains to the pull-side, front approach of swinging doors. (<u>See</u> Fig. 25, Diagram (a), attached to this Order as "Appendix".) The note corresponding to Figure 25, Diagram (a), states, "Front approaches to pull side of swinging doors shall have maneuvering space that extends 18 in (455 mm) minimum beyond the latch side of the door and 60 in (1525 mm) minimum perpendicular to the doorway."

The types of lines used in the diagram – <u>e.g.</u>, solid versus dotted lines – and their respective meanings are explained in ADAAG § 3, Table 1 ("Graphic Conventions"). (<u>See</u> Appendix.)

---

[9](...continued)
alteration of buildings and facilities covered by titles II and III of the ADA to the extent required by regulations issued by Federal agencies, including the Department of Justice and the Department of Transportation, under the ADA." ADAAG § 1.

1    Plaintiff relies on the language of ADAAG § 4.13.6

2   and Figure 25, Diagram (a) to argue that the ADA requires

3   "between 12 and 18 inches of clearance on the strike side

4   *wall* of restroom doors." (Opp'n at 2 (emphasis added).)

5   Defendant argues that ADAAG § 4.13.6 establishes no

6   requirement regarding walls but rather sets the standard

7   only for "clear **floor space** to allow for a wheelchair to

8   maneuver around a swing-out door." (Cross-MSJ at 3

9   (emphasis in original).) For Defendant to be entitled to

10  judgment as a matter of law here, the Court must find

11  that ADAAG § 4.13.6 does not set a standard for the

12  length of a wall adjacent to a restroom stall door.

13

14   Another court in this district recently addressed the

15  question of § 4.13.6's requirements. See Rush v. Denco

16  Enterprises, Inc., ---F. Supp. 2d---, 2012 WL 1423584,

17  (C.D. Cal. Apr. 24, 2012).[10]  There, in support of his

18  _____

19   [10] Pursuant to Federal Rule of Evidence 201,
    Defendant's Cross-MSJ included a request for judicial

20  notice of the Rush docket, which Defendant attached as
    "Exhibit 1" to its motion, and Defendant's Kenefick

21  Declaration included requests for judicial notice of the
    Rush plaintiff's second amended complaint and the Rush

22  defendant's submitted declarations, which Defendant
    attached to the Kenefick Declaration as Exhibits 2-5.  As

23  these requests complied with Rule 201, the Court
    accordingly takes notice of the provided documents.

24   Plaintiff likewise seeks to direct the Court's
    attention to adjudicative facts, namely a declaration

25  submitted in a prior case (see Opp'n at 7-8) and a
    document submitted by the Rush defendant (see id. at 7).

26  Plaintiff failed to request judicial notice as to both
    documents and failed to supply the Court with a copy of

27  the Rush document, as required by Rule 201.  The Court
    declines to take judicial notice on its own of these

28                                        (continued...)

24

1    reliance on Rush, the plaintiff primarily cites to the

2    following discussion, where the district court granted

3    the plaintiff's motion for summary judgment as to her §

4    4.13.6 claim:

5            The only potential dispute is whether
         Plaintiff's allegations regarding strike side
6        clearance describe an architectural barrier in
         violation of ADAAG regulations.
7            ADAAG Regulation 4.13.6 governs "Maneuvering
         Clearances at Doors" and provides that "minimum
8        maneuvering clearances at doors that are not
         automatic or power-assisted shall be as shown in
9        Fig. 25." Fig. 25, reproduced by Plaintiff in
         her Motion for Summary Judgment, provides that
10       there must be at least 18 inches on the strike
         side wall of a "pull" door, although 24 inches
11       is preferred. According to Plaintiff's
         Declaration, the strike side wall on the pull
12       door to exit the women's restroom provides
         clearance of less than eleven inches.  As such,
13       it is in violation of ADAAG regulations and
         considered a barrier to access.

14

15   Id. at *4 (emphasis added) (citations to the record

16   omitted).

17

18       Although Defendant contends that "the facts [in Rush]

19   are markedly different from the situation presented

20   here," (Cross-MSJ at 9), the main factual distinction

21   between the cases is a minor one: a pull-side door was at

22   issue in Rush whereas a push-side door is at issue here.

23   Defendant does not explain why this distinction would be

24   salient to determining the meaning of § 4.13.6.

25

26   _____

27       [10](...continued)
     documents.  See Fed. R. Evid. 201(c)(1-2).

28

1    Nevertheless, Defendant points out legitimate reasons

2  for the Court to decline to treat the above-quoted

3  passage from <u>Rush</u> as a legal finding as to the meaning of

4  § 4.13.6.  These reasons are clear from the explanation

5  provided in <u>Rush</u> as to why the court granted Plaintiff's

6  motion:

7          Plaintiff has thus established a prima facie
        case of discrimination, at which point the burden
8        shifts to Defendant to rebut Plaintiff's evidence.
        Defendant's "opposition" does not challenge any of
9        Plaintiff's facts. Defendant hints at a dispute of
        law by stating that the "undersigned believes
10       there is no requirement for the longer wall
        Plaintiff appears to be seeking." Even at oral
11       argument, Defendant did not point to any law or
        facts to rebut Plaintiff's prima facie case . . .
12       . Defense counsel's unsupported musing is far
        from sufficient to rebut Plaintiff's prima facie
13       case.

14          Defendant cannot simply submit a completely
        conclusory and entirely insufficient Rule 56(e)
15       motion as its opposition and expect it to
        successfully oppose a Motion for Summary Judgment
16       when Plaintiff has pled a prima facie case of
        discrimination. . . .  This was the time for
17       Defendant to submit his evidence to disprove
        Plaintiff's one remaining claim; it failed to do
18       so.

19  <u>Id.</u> at *4-*5.

20

21    The plaintiff's motion for summary judgment in <u>Rush</u>

22  was effectively unopposed.  Instead of attemping to

23  assert genuine issues of material fact, the defendant

24  argued for a continuance because it learned that

25  "Plaintiff's definition of 'strike clearance' may differ

26  from what is required by law" and wanted time to consult

27  a Certified Access Specialist about the definition

28

1   propounded by the plaintiff.  Id. at *2.  In short, the

2   defendant presented the court with no evidence or

3   argument to dispute the plaintiff's definition of §

4   4.13.6; this Court thus does not find Rush persuasive

5   authority on the interpretation of § 4.13.6.  As

6   discussed below in the summary of evidence submitted by

7   Defendant here, the defendant in Rush belatedly submitted

8   evidence showing that § 4.13.6 does not refer to wall

9   length.  This submission was made in support of the

10   defendant's motion for reconsideration, a matter still

11   pending.

12

13       Rush concerned the failure of a party to meet its

14   burden rather than the substance of the ADA's

15   requirements.  The voluminous evidence before the Court

16   here showing that § 4.13.6 does not pertain to wall

17   length substantially distinguishes this matter from that

18   presented in Rush.

19

20       Plaintiff's primary contention is that the required

21   length shown in Figure 25, Diagram (a), appears above a

22   solid line, and the ADAAG uses dotted lines to represent

23   the boundaries of clear floor area.  (See Opp'n at 3;

24   Table 1, Appendix.)  Defendant counters that the figures

25   in the ADAAG "are contextual only and do not contain

26   dimensioned specifications."  (Cross-MSJ at 3.)

27

28

While the Court does not presume anything in the ADAAG to be "contextual only" without clear evidence to that effect, Defendant provides substantial and varied evidence demonstrating that § 4.13.6 in fact only refers to clear floor space and sets no standard for wall length.  For example, Defendant submits as follows:

- The findings and testimony of expert Larry Wood, a licensed architect and Certified Access Specialist whose practice "predominantly involves representing clients regarding compliance with the ADA."  (Wood Decl. ¶¶ 2-7.)  Mr. Wood testified that § 4.13.6 does not refer to wall length and that the Store, which he inspected, complied with § 4.13.6.  (Id.)

- Three guides published by the Department of Justice and relied on by Mr. Wood to support the assertion that § 4.13.6 sets a standard for clear floor space only.  (Wood Decl., Exs. 4-6.)

- Two California Building Code manuals relied on by Mr. Wood to support the assertion that § 4.13.6 sets a standard for clear floor space only.  (Wood Decl., Exs. 8-9.)

- An excerpt from the United States Access Board's Scoping and Technical Requirements clarifying that § 4.13.6 requires clear floor space in proximity to the "wall plane" to ensure adequate

space for someone in a wheelchair to maneuver
through the door at an angle.  (Cross-MSJ at 5.)

- The declaration of Certified Access Specialist
  Karen O'Rourke Haney submitted to the <u>Rush</u> court
  after it granted summary judgment, stating:

> As a Certified Access Specialist
> ("CASp"), I am concerned about any
> situation in which a litigant submits
> information to a court about conditions
> which causes the court to conclude said
> conditions are improper if they are not,
> in fact, improper, because such a
> decision could be used as precedent to
> seek damages and injunctive relief at
> other properties where the relevant
> conditions comply with applicable law.
>
> I further understand that the Court's
> conclusion may be based in part on
> Plaintiff's belief that any applicable
> standard for "strike clearance" would
> require the wall immediately adjacent to
> the side of a door which opens to be any
> particular length; I have reviewed this
> issue extensively and believe that there
> is no [ADA] requirement for the length of
> such a wall . . . .  Rather, the "strike
> clearance" is the clear floor space
> located adjacent to the hardware side of
> the door to allow for proper wheelchair
> maneuvering clearance.

(Haney Decl. ¶¶ 5-6, attached to Kenefick Decl. as Ex.
2.)

- Two additional declarations submitted in
  <u>Rush</u> by two other Certified Access
  Specialists reaching the same conclusions as
  Ms. Haney.  (<u>E.g.</u>, Heller Decl., ¶ 3,
  attached to Kenefick Decl. as Ex. 3 ("The
  purpose of this declaration is to confirm

1          that in the entirety of my professional
2          experience I am aware of no such requirement
3          and do not believe that any such requirement
4          exists— . . . there is no requirement that a
5          wall immediately adjacent to the opening
6          side of a door be of any particular
7          length."); Argueta Decl., ¶ 3, attached to
8          Kenefick Decl. as Ex. 4 (stating the same).)

11     The evidence before the Court conclusively
12 demonstrates that, as a matter of law, § 4.13.6 is
13 unrelated to wall length, eliminating any chance of a
14 reasonable jury finding that Plaintiff's alleged barrier
15 exists, and, accordingly, the Court grants Defendant's
16 Cross-Motion for Summary Judgment as to Plaintiff's §
17 4.13.6 claim.

19        **b.   Remediated Barriers**
20     "Because a private plaintiff can sue only for
21 injunctive relief (i.e., for removal of the barrier)
22 under the ADA, a defendant's voluntary removal of alleged
23 barriers prior to trial can have the effect of mooting a
24 plaintiff's ADA claim." Oliver v. Ralphs Grocery Co.,
25 654 F.3d 903, 905 (9th Cir. 2011).

1    Plaintiff's counsel has had summary judgment granted
2 against his client in numerous recent lawsuits on the
3 ground that the alleged barrier had been remedied, thus
4 mooting the plaintiff's claim.[11]  There is no case
5 authority supporting his contention that "proof of
6 alterations [made by a defendant to cure ADA violations]
7 creates a dispute of material fact as a matter of law . .
8 . which preclude[s] summary judgment."  (Opp'n at 10.)
9 For this novel proposition, Plaintiff's counsel
10 misguidedly quotes one out-of-context sentence from an
11 unpublished 2005 order  rejecting *his* motion for summary
12 judgment.  (See id.)

14    The Court rejects Plaintiff's proffered
15 interpretation of the law on the ground that it is not
16 supported by either legal authority or common sense.  The
17 Court thus finds moot Plaintiff's claims for injunctive
18 relief as to alleged barriers that no longer exist.

20    Likewise, the Court finds moot Plaintiff's claims for
21 declaratory relief under the ADA as to the removed
22 alleged barriers.  As only injunctive relief is available

24    [11] In the last year alone, such cases include
25 Martinez v. Columbia Sportswear USA Corp., No. 10-CV-1333-GEB, 2012 WL 1640584 (E.D. Cal. May 9, 2012); Rush v. Gen. Growth Properties, Inc., No. 10-CV-06721-DDP,
26 2012 WL 1115518 (C.D. Cal. Apr. 3, 2012); Oliver v. Ralphs Grocery Co., 654 F.3d 903 (9th Cir. 2011); Chapman
27 v. Chevron Stations, Inc., 09-CV-1324-AWI, 2011 WL 4738309 (E.D. Cal. Oct. 5, 2011).

under the ADA, this is not a case where "declaratory judgment could help to remedy the effects of the [defendant's] statutory violations," nor is it a case where such relief is necessary "to ensure that similar violations [do] not occur in the future."  Forest Guardians v. Johanns, 450 F.3d 455, 462-63 (9th Cir. 2006).

The Court finds summary judgment appropriate for all of Plaintiff's alleged barriers that Defendant has since removed.

### c. Toilet Tissue Rolls

Plaintiff's remaining claim alleges that Defendant is in violation of the ADA requirement that, according to Plaintiff, "all toilet tissue dispensers shall be installed 'within reach' of the toilet."  (Opp'n at 8.) In California, "within reach" as required by ADAAG § 4.16.6 is defined as "within 12 inches of the front edge of the toilet seat."  (See id. (citing Cal. Building Code § 1115(b)(9)(3)).)  The Store's restroom stall at issue has a toilet tissue dispenser that is within 12 inches of the front edge of the toilet seat, and an extra dispenser that is not.  (Id.; Cross-MSJ at 10-11.)  Plaintiff states that he would be satisfied as to this alleged barrier if Defendant removed the spare roll of toilet

1   tissue from the restroom stall.  (See Kohler Dep. at

2   70:1-6, attached to Kenefick Decl. as Ex. 1.)

3

4        Plaintiff's claim is mooted as no barrier exists.

5

6                   **IV. PLAINTIFF'S STATE CLAIMS**

7        A district court may decline to exercise

8   supplemental jurisdiction over a state claim if "the

9   district court has dismissed all claims over which it has

10  original jurisdiction." 28 U.S.C. § 1367(c)(3).

11  "The Supreme Court has stated, and we have often

12  repeated, that 'in the usual case in which all federal-

13  law claims are eliminated before trial, the balance of

14  factors . . . will point toward declining to exercise

15  jurisdiction over the remaining state-law claims.'" Acri

16  v. Varian Associates, Inc., 114 F.3d 999, 1001 (9th Cir.

17  1997) (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S.

18  343, 350 n. 7 (1988)).

19

20       After considering the jurisdictional principles of

21  judicial economy, procedural convenience, fairness to

22  litigants, and comity, the Court finds it appropriate to

23  decline supplemental jurisdictional over Plaintiff's

24  remaining state law claims.  See id. at 343.

25

26

27

28

1                        **V.  CONCLUSION**

2    For the foregoing reasons, the Court:

3         (1)  Finds Plaintiff had standing as to each of his

4              claims under the ADA;

5         (2)  GRANTS Defendant's Cross-Motion for Summary

6              Judgment on Plaintiff's ADA claims; and

7         (3)  DISMISSES WITHOUT PREJUDICE Plaintiff's state

8              claims under 28 U.S.C. § 1367(c)(3).

16   Dated:   June 27, 2012

17                              VIRGINIA A. PHILLIPS
18                         United States District Judge

34